# N. Y. COMMON PLEAS.

MARTIN A. J. LYNCH, plaintiff and respondent, agt. BRYAN McKENNA, defendant and appellant.

*Real estate brokerage — liability of purchaser to pay commission — when earned.*

The defendant employed the plaintiff, a real estate broker, to purchase two lots for him. The broker conducted the negotiation until the owner finally agreed to accept $32,000, net, for them. The owner told the broker that he would pay no commission on a sale at that price. The broker communicated these facts to his customer, who said the commission was a small matter and that he would see to it or take care of it. The matter remained in this condition for about one month, when the defendant went personally to the owner and completed the purchase at the net price given by the owner to the broker.

*Held*, that the purchaser was liable for the brokerage; that, as the defendant had not abandoned the intention of buying the lots, he could not ignore the broker's claim for commission by taking the matter in his own hands and continuing it where the broker left off, and that the broker's compensation was earned when the purchase was definitely agreed upon.

*General Term, November,* 1879.

THE action was tried in the New York marine court. The trial was by the court without a jury. The facts appear in the head-note and in the following opinion of the trial judge:

McADAM, *J.* — The decision of this case is rendered difficult by the fact that the parties to the record on both sides and their witnesses appear to be credible and disposed to tell the truth, thus making it hard to say that I disbelieve either. Neither of the parties has willfully sworn false, and yet it is clear that the memory of either the plaintiff or the defendant is sadly at fault.

I have, therefore, diligently considered and weighed the evidence for the purpose of ascertaining, if possible, which

Lynch agt. McKenna.

side is correct in the recollection of the facts. The evidence shows, without material dispute, what in law amounts to an employment of the plaintiff to negotiate for the purchase of certain lots from one Dowdney; that under such employment he called upon Dowdney, and at the defendant's request made an offer of $28,000 for the lots in question. Dowdney declined the offer, saying that his price was $36,000 but he would take $34,000 for them. He finally said he would take $32,000, net, that is to say, if the plaintiff's customer would pay $32,000 he (Dowdney) would pay no commission, but that the plaintiff must look to his customer for it. It is also undisputed that the substance of this interview was reported to the defendant by the plaintiff, and that they, too, had some conversation in respect to it. As to what the details of that conversation were the plaintiff and defendant are in conflict. The plaintiff swears that he (defendant) said the commission was a small matter, that he would see to it, or would attend to it, or would take care of it; to let the negotiation rest for a while and do nothing further till he heard from him. The defendant, on the other hand, denies that he ever said a single word to the plaintiff in respect to seeing to the commission, or arranging it or taking care of it.

After this interview the defendant went to Dowdney and closed the contract with him at $32,000 cash (the price and terms stated by Dowdney to the plaintiff), and upon concluding it Dowdney mentioned Mr. Lynch's name as the broker in the transaction and said he wanted it understood that the price was net and that Lynch must not look to him for commission, whereupon the defendant said to Dowdney: "Never mind about Lynch, he has nothing more to do with the matter."

This evidence of Dowdney demonstrates that Lynch, and not Crimmins (as claimed by the defendant), was regarded as the broker in the transaction.

That Lynch was not to look to Dowdney but to the defendant is inferentially confirmed by the fact that when Dowdney told Lynch that he would not be responsible for any commis-

sion and that the price, $32,000, was net, Lynch did not complain, nor did he, in any manner, suggest that Dowdney was the person from whom he expected commissions under any circumstances.

It is, therefore, natural and consequently probable, that Lynch, when he went to the defendant and communicated the terms Dowdney was willing to accept, should have referred to the $32,000, and to the fact that this price was net and was not to include the commissions, or otherwise we are met by the conclusion that the plaintiff must have been entirely indifferent to the fact, important to most brokers, whether he received any compensation or not.

Subsequent to this the plaintiff saw the defendant and insisted upon a settlement of his claim, and said that, for the sake of peace, he would take fifty dollars, and that the defendant, thereupon, proposed that if Dowdney would pay half he would pay the other half. Dowdney refused to pay any part of the brokerage, as well he might, for he had intimated that determination from the first, and thus the proposed compensation fell through.

The defendant, by his answer, in pleading his reasons for not paying the plaintiff's claim, alleges that the purchase was not made through the plaintiff, as the broker, but through another broker, and the evidence discloses that this person was one John D. Crimmins, a brother in law of Dowdney, who was acting in his interest, but not as a broker, in negotiating the sale. If there was any broker in the transaction the proof is clear that such broker was the plaintiff.

The defendant urges that it is unusual for a purchaser of property to pay brokerage; that, according to the customary mode of transacting such business, he demands and receives his pay from the seller. This is undoubtedly true, as a rule, but where the seller, in the first interview, informs the broker that this rule is not to be enforced against him, that the purchase-price is net, that he will not pay brokerage, and that the broker must look to his purchaser for it, and the broker com-

municates this fact to his customer, who agrees to see to it, or attend to it, or take care of it (it is immaterial which of these terms was used), the rule is reversed and the vendee, not the vendor, becomes the paymaster.

Upon the whole case, therefore, I am led to believe that the plaintiff's recollection of the transaction accords with the facts, and that the defendant is mistaken in regard thereto. The delay between the time the negotiation was commenced and the time the defendant concluded it in person does not detract from the broker's right to brokerage, because it is evident that the negotiation started by the broker had not fallen through, that the defendant had not abandoned his intention of buying the lots; and after the broker had commenced the negotiations the defendant could not ignore him by taking the matter in his own hands and continuing it where the broker left it off without rendering himself liable to the broker for his reasonable compensation, which was earned when the purchase was definitely agreed upon (*See Morgan* agt. *Mason*, 4 *E. D. Smith*, 636; *Chilton* agt. *Butler*, 1 *id.*, 150; *Murray* agt. *Currie*, 7 *Carr. & Payne*, 584; *Stillman* agt. *Mitchell*, 2 *Robt.*, 523; *Martin* agt. *Stillman*, 53 *N. Y.*, 615).

It follows, therefore, that the plaintiff is entitled to judgment for $320, the amount claimed, with interest and costs.

This judgment was affirmed by the general term of the marine court, and on further appeal was taken to the general term of the court of common pleas for review. That court filed the following opinion:

*Turner, Lee & McClure*, for appellant.

*D. M. Porter*, for respondent.

VAN HOESEN, *J.*— There is evidence sufficient to sustain every finding of the trial term, and upon those findings there can be no doubt of the correctness of his conclusions of law.

Were the evidence to be submitted to me as a judge at trial term, I should reach the same conclusion which judge McADAM arrived at. The only room for doubt is as to whether the contract actually made by McKenna and Dowdney was a mere modification of the terms which Lynch was instructed to propose, or whether it was a new and independent contract originated by one or both of the principals after Lynch's negotiations had been dropped and abandoned. Taking all the evidence together I think judge McADAM was right in holding that McKenna merely took up the thread where Lynch, at his suggestion, had for the time left it.

The judgment should be affirmed, with costs.

J. F. DALY, justice, concurred.